STEPHEN H. GUSS *v.* FRANCES R. GUSS
(2261)
(2262)

DANNEHY, C.P.J., DUPONT and BORDEN, Js.

Argued October 7, 1983—decision released March 13, 1984

*Joseph M. Kaye,* with whom, on the brief, was *Arnold H. Rutkin,* for the appellant (defendant).

*Richard L. Albrecht,* with whom was *Randi Levine,* for the appellee (plaintiff).

*Richard L. Winter,* for the minor children.

DANNEHY, C.P.J. These companion matters, which are separate but related phases of the same case, are here on appeal[1] from judgments rendered in the Superior Court for the judicial district of Fairfield. The matters were tried separately but were consolidated on appeal. The appellant in each case is the defendant, Frances Guss. The appellee in each is her former husband, the plaintiff, Stephen H. Guss. In the first phase, the defendant appealed from a judgment transferring custody of the parties' minor children to the plaintiff and, in the second phase, she appealed from an order modifying alimony and support payments to her.

The marriage of the parties was dissolved on January 18, 1977. Custody of their two minor children was given to the defendant subject to the plaintiff's rights

---

[1] These appeals, originally filed in the Supreme Court, were transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

of reasonable visitation under the terms of a separation agreement which was incorporated in the judgment and which required the plaintiff to pay $1200 monthly as unallocated alimony and support and maintenance of the children. The details of the plaintiff's rights of reasonable visitation are spelled out in the separation agreement. Liberal in scope, these visits included one weekday evening each week, overnight visitation every other weekend, alternating Thanksgiving, Christmas and Easter holidays, and not less than two or more than six continuous weeks during the children's vacation and recess periods. On June 5, 1979, the parties entered into a stipulation to modify the judgment of dissolution. The stipulation modified the original judgment making Connecticut the children's place of residence so as not to interfere with visitation, and it further provided that, if the defendant removed the children from Connecticut, so as to interfere with the plaintiff's visitation rights, it would be in their best interests to award custody automatically to the plaintiff upon his filing an affidavit with the court alleging such violation. The stipulation was signed by both parties and by counsel for the children; the judgment was modified in accordance with that stipulation. Thereafter, the defendant moved for permission to remove the children to California to enable her to attend law school there. Following a hearing, the court, *Belinkie, J.*, on August 25, 1980, granted her permission to remove the children to an area in or close to New York City, but specifically prohibited their removal to California.

The defendant and her children moved to California on or about September 20, 1980, in direct violation of the court's order of August 25. On September 23, the attorney for the plaintiff presented to a judge in chambers a motion for change of custody, alleging that the defendant had removed the children to California in violation of the court's order. The motion was not filed

with the clerk. See Practice Book § 127. It was not served on the defendant. It was handed directly to the judge. The judge, *Jacobson, J.,* signed an order changing custody without a hearing. Almost immediately, the plaintiff went to California where he took physical custody of the children by trickery and returned with them to Connecticut.

On or about October 18, 1980, the defendant returned to Connecticut. After she was denied a hearing on her application for a writ of habeas corpus, she appealed from the judgment which gave custody of the children to the plaintiff. The plaintiff countered the appeal with a motion that the stay of proceedings on appeal be terminated and a motion that the defendant be adjudged in contempt for removing the children to California. The defendant responded with a motion that the plaintiff be held in contempt because he refused to return the children to her custody under the automatic stay of execution pending the appeal. Neither party sought to modify the amount of payments which had been ordered in the judgment of dissolution for alimony and for support and maintenance of the children. On December 31, 1980, the court, *Geen, J.,* denied the defendant's motion for contempt and, at the same time, terminated the stay of execution, found her in contempt for removing the children to California and ordered her to pay $4536.31, the money spent to bring the children back to Connecticut, to the plaintiff. The court, sua sponte, also modified the unallocated periodic alimony and support payments to the defendant from $1200 per month to $500 per month.

The problems of the parties with custody are many, bitter and obviously continuous, since the problems continued throughout the years from the original judgment and, in fact, at the time of oral argument. The pleadings in the case have been protracted, including many motions and a succession of hearings. We shall not,

however, discuss these problems or state any other facts except insofar as necessary to make clear the application of the pertinent rules of law, and we shall consider no claims of law not necessary to our discussion.

## THE FIRST PHASE

The judge, *Jacobson, J.,* concluded in substance that the agreement of the parties in their stipulation of June 5, 1979, which modified the original judgment of dissolution, controlled all of the issues presented in the plaintiff's motion for custody of the children. It is true that our courts usually defer to terms negotiated by the parties. The continuing jurisdiction of the Superior Court over the custody of minor children of a dissolved marriage may, however, not be ousted by the terms of an agreement entered into between the parents at the time the marriage is dissolved. *Krasnow* v. *Krasnow,* 140 Conn. 254, 260, 99 A.2d 104 (1953). Under our statute, it is clear that the court must resolve the issue of custody in the best interests of the child.[2] See General Statutes § 46b-56 (b). When, as in this case, the court is called upon to apply an agreement deciding custody, the dispositive consideration still remains the child's best interests.

There was no determination, other than at the time the judgment of dissolution was modified in accordance with the stipulation, that enforcement of the agreement would serve the best interests of the children. A child's best interests, however, cannot be prospectively deter-

---

[2] Section 46b-56 (b) of the General Statutes provides: "In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation if such causes are relevant in a determination of the best interests of the child."

mined. Before transferring custody to the plaintiff, "the court was bound to consider the child[ren's] *present* best interests and not what would have been in [their] best interests at some previous time." (Emphasis in original.) *In re Juvenile Appeal (Anonymous),* 177 Conn. 648, 664, 420 A.2d 875 (1979). The court below erred in failing to consider those interests.

## THE SECOND PHASE

The trial court, *Geen, J.,* erred in reducing, sua sponte, the unallocated alimony and child support awards provided for in the separation agreement of the parties which was incorporated into the judgment of dissolution. The plaintiff had filed motions seeking that the stay of proceedings on appeal be terminated and that the defendant be adjudged in contempt for removing the children to California. The court ruled on those motions and also, sua sponte, reduced the amount of the defendant's original financial award. The defendant had no notice, written or constructive, that the award would be modified during the course of the hearing.[3]

A trial court cannot on its own initiative modify alimony or child support orders. It is such action that appeals are made of. The Supreme Court, in *Connolly* v. *Connolly,* 191 Conn. 468, 464 A.2d 837 (1983), tells why these appeals are successful.[4] See also *Tsopanides* v. *Tsopanides,* 181 Conn. 248, 435 A.2d 34 (1980).

Section 2.1 of the parties' agreement provides for unallocated alimony and child support payments in a

---

[3] It is not necessary to decide whether General Statutes § 46b-86 (a) required written notice before modification under that statute could be heard and decided.

[4] *Connolly* v. *Connolly,* 191 Conn. 468, 464 A.2d 837 (1983), holds that General Statutes § 46b-86 (b) requires a written notice and hearing on any termination of periodic alimony and, further, holds that constructive notice is insufficient. Without written notice, the court has no authority to terminate periodic alimony under § 46b-86 (b).

total amount of $1200, payable monthly. Section 2.2 provides that the payments provided for alimony and support and maintenance of the children shall not be subject to modification for a period of five years regardless of whether or not there is a substantial change in circumstances of the parties, except that the amount provided for the needs of the children may be modified, although increases in the income of the parties were considered in establishing the plaintiff's obligation. Section 2.3 states that the monthly payments of $1200, as provided in section 2.1, "shall be reduced by the sum of $350 per month or *by such sums as may be allocated to child support at that time as each child* . . . ceases to reside with the Wife under such circumstances where the Wife is no longer furnishing such child support . . . ." (Emphasis added.) Thus, the agreement itself contemplated that any reduction in payment by the plaintiff to the defendant, if the children were no longer residing with the defendant, would be calculated on the use of alternative tests. The amount of the reduction would be $350 or whatever sum was appropriate for the support of the particular child who no longer resided with the defendant. The agreement took into account the fact that children have widely varying needs which sometimes require disparate monetary funds by which those needs can be met. *Delevett* v. *Delevett,* 156 Conn. 1, 238 A.2d 402 (1968). The defendant had no opportunity, by adequate notice of any kind, to show that the monetary needs of both children may not have been equal, or that the need of either one was lesser in amount than $350.

We are aware that ordinarily a reversal of a modification of an award for periodic alimony and support would require the obligated spouse to make payment in an amount sufficient to equal the unpaid original award. Here, however, since we recognize that custody

of the two children of the parties has been with the plaintiff for a period in excess of three years, and that the custody should remain with the plaintiff until a trial court has definitively determined with which parent custody should lie, it follows that the question of what amount, if any, should have been deducted from the defendant's unallocated award of alimony and support should remain in abeyance until such time as a hearing is held on custody, and the parties, upon proper motion in connection therewith, have introduced whatever evidence is available or necessary to show what sums, if any, were warranted in reduction of the defendant's award during the time the plaintiff has had custody of their children. The relief to be granted in a dissolution action is equitable in nature. *LaCroix* v. *LaCroix,* 189 Conn. 685, 689, 457 A.2d 1076 (1983). Equity here requires that we fashion an adequate remedy for any monetary burden to the plaintiff arising out of his custody of the children from the time of the trial court's decision effectively granting him custody until the time of a definitive order of custody.

There is error in part, the judgments modifying custody and alimony and support are set aside, and the case is remanded for further proceedings consistent with this opinion. As more than three years have passed since the order transferring custody and circumstances may have changed in the meantime, physical custody of the children shall be with the plaintiff until the trial court has had an opportunity to address the issue of their custody at the new hearing. See *Yontef* v. *Yontef,* 185 Conn. 275, 292–93, 440 A.2d 899 (1981). In the meantime, the plaintiff shall continue to make payments in the amount of $500 per month in accordance with the trial court's modification, subject to retroactive modification at the new hearing.

In this opinion DUPONT, J., concurred.

BORDEN, J. (concurring). I concur in the majority opinion.

I also concur in that part of the rescript to the opinion which provides that the physical custody of the children remain with the plaintiff until the trial court has had an opportunity to address the issue of their custody at the new hearing. Lest, however, litigants think we are now in the business of issuing custody orders, I believe that a further explication is in order of what I understand to be the theoretical underpinnings of that part of the rescript.

Ordinarily a finding of error in the trial court's order of change of custody would, without more, require custody to revert to the status quo ante, which in this case would be custody in the defendant, until a new hearing was held. We are aware, however, that the children have been living with the plaintiff since he took them from California on October 5, 1980. The order of the court, *Geen, J.,* terminating the stay was filed on December 31, 1980. The defendant had agreed to permit the children to remain with the plaintiff pending the hearing on the motion to stay. In that proceeding, which involved a full hearing and a detailed factual memorandum of decision reviewing the tangled history of the case, the court found that it was in the best interests of the children to remain with the plaintiff pending the appeal.[1]

Under these extreme circumstances I do not believe that justice, which includes the best interests of the chil-

[1] The precise issue before the court, *Geen, J.,* was whether the due administration of justice required a stay of the order pending appeal. Practice Book § 3065. The issue on a motion for modification is (1) whether there has been a material change of circumstances altering the last finding of the best interests of the children, or (2) whether the last order was not based on those best interests. *Hall* v. *Hall,* 186 Conn. 118, 122, 439 A.2d 447 (1982). Although the court found that it was in the children's best interests to remain with the plaintiff pending the appeal, it had no occasion to determine the other issues pertinent to a change of custody order.

dren, would be served by requiring them now to return to the defendant pending a new hearing, simply because we have concluded that there was a procedural error preceding the decision on change of custody nearly three and one half years ago. Nor do I think we are powerless to remedy this situation.

Like the Supreme Court, we have general supervisory power over appeals. Practice Book §§ 2000, 3096. This includes the power to make appropriate postappeal orders. See *In re Juvenile Appeal (83–BC)*, 189 Conn. 66, 81, 454 A.2d 1262 (1983). Furthermore, the Supreme Court has held that the trial court has broad discretion to issue, sua sponte, interim postjudgment orders on custody where an appeal appears likely. *Yontef* v. *Yontef*, 185 Conn. 275, 276, 440 A.2d 899 (1981). The basis of this is to "[protect] the primary interests of the children in a continuous, stable custodial placement." Id., 292. I conclude, therefore, that under the unique circumstances of this case the trial court has equally broad discretion to issue, either sua sponte or in response to an appropriate motion, interim postappeal orders, on remand from this court, regarding the custody of the children pending a new hearing, so as "to serve the best interests of the children for the near as well as for the more distant future." Id., 294. In order to permit the exercise of this discretion, I join in the order that the present custodial status quo of the children be maintained until the trial court has had the opportunity to address the issue of their custody at the new hearing.