[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO MODIFY ALIMONY AND SUPPORT #244
In his motion to modify alimony and child support dated October 26, 2001 the plaintiff alleges there has been a substantial change of circumstances, specifically his unemployment, which warrant a modification of his child support and alimony obligations. The current order of alimony is $225.00 per week and is for a term of ten years from the date of judgment. The current order of child support is $356.00 per week for three children. These orders were contained in the judgment of dissolution dated October 30, 1997, (Holden, J.), and have not been modified since they were entered.
Postjudgment modification of alimony and child support is governed by General Statutes § 46b-86. A party seeking modification bears the burden of showing the existence of a substantial change in circumstances, Jaser v. Jaser, 37 Conn. App. 194 (1995).
The court will first consider the request to modify the alimony order being guided by the following:
"When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court CT Page 16013 finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the § 46b-82 criteria, make an order for modification. . . . The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . The inquiry, then, is limited `to a comparison between the current conditions and the last court order.'" (Citations omitted.) Crowley v. Crowley, 46 Conn. App. 87, 92 (1997).
In order to consider the conditions at the time of the last court order, the court has carefully reviewed Judge Holden's Memorandum of Decision. "The issue at trial was clearly to determine the amount of Mr. Morris's income, so that appropriate financial orders may be entered." (Memorandum of Decision p. 2.) Judge Holden did not make a specific numerical finding as to the plaintiff's income or earning capacity. In his memorandum he did state the plaintiff "has been employed throughout the marriage, and has provided well for his family and has a well developed earning capacity." He also stated, "[a] prior proceeding found that Mr. Morris had gross receipts of $105,000 in his 1994 tax return. On his 1995 tax return, the figure was $55,000. His recent rental application placed his income at $80,000. The plaintiff's financial affidavit at the time of trial was an income of $588.30 per week.
"I find that the plaintiff has a significant and substantial income at his profession, sufficient to provide financial support for his family. Further, the court finds as incredulous the testimony of the plaintiff regarding his earnings and finances." (Memorandum of Decision p. 3.)
This court notes that said 1994 and 1995 receipts average $80,000 per year which was also the amount stated in the rental application referred to. It is reasonable to conclude that Judge Holden based his orders on an earning capacity of at least $80,000 per year.
At the time of the dissolution the plaintiff was engaged in sales management and sales of insurance and annuities. Since the dissolution he has been engaged in similar work as a captive agent for Mid America Financial. That position terminated on October 20, 2001 when Mid America filed bankruptcy. The plaintiff is not presently working.
In 1997 Judge Holden observed that Mr. Morris's income fluctuates and this court finds that it continues to do so. The plaintiff's 1998, 1999 and 2000 tax returns were admitted, Plaintiff's Exhibits 1, 2, 6. They show that while associated with Mid America the plaintiff earned the following amounts of business income after expenses; 1998 $62,511, 1999 $42,303, 2000 $204,173.
In 2000 the plaintiff purchased a home in Guilford for $150,000 and CT Page 16014 obtained a mortgage on the property in the amount of $214,550. This purchase money mortgage was refinanced on February 23, 2001 and the new mortgage amount was $275,000. The defendant received $41,844 from the refinance transaction.
In connection with the refinance the plaintiff submitted two loan applications, Defendant's Exhibit D, E, to the lender. Both applications were certified and signed by the plaintiff on February 12, 2001. On one application the plaintiff states his base employment income as $9,519 per month ($114,288 annually) and on the other $18,660 per month ($223,992 annually). The plaintiff was unable to provide a credible explanation for the different amounts stated on the applications.
On his financial affidavit the plaintiff presented various gross income calculations which range from $619.00 per week ($32,188 annually) to $327.37 per week ($17,023 annually). The Plaintiff claims these amounts reflect the actual income he has received since September 2000. Based upon the findings in Judge Holden's memorandum the court concludes that the plaintiff's earning capacity, rather than his actual earnings, should be considered in determining the current conditions.
The plaintiff has a long history of working in sales of insurance and annuities. As of the date of the hearing on this motion, November 21, 2001, his efforts to find new employment consisted of putting together a resume, having a couple of interviews, and doing an Internet search. The court does not believe the plaintiff has made sufficient and adequate efforts to find employment
The court has considered the plaintiff's income over the last three years, his representations to his lender, the relatively brief time that has elapsed since he lost his position with Mid America, and his meager efforts to find new employment. The plaintiff has not sustained his burden of proving a substantial decrease in his earning capacity below the earning capacity of $80,000 per year existing at the time of the dissolution. Since the original orders were based on earning capacity, the plaintiff is not entitled to rest on the fact that his actual income may have changed. See Logan v. Logan, 13 Conn. App. 298 (1988).
With regard to the child support order, the plaintiff has submitted a child support guideline worksheet which states a presumptive current support amount of $143.00 per week. The court finds the presumptive amount is inappropriate in this case and will deviate based on plaintiff's earning capacity. Over the last three years the plaintiff's average gross income was approximately $100,000 per year. The plaintiff's income over the last three years substantiate an earning capacity sufficient to pay the current support order of $356.00 a week. The CT Page 16015 plaintiff has failed to sustain his burden of showing a substantial change in circumstances which require a modification of the child support order.
For the foregoing reasons, the motion to modify child support and alimony is denied.
Edward S. Domnarski, Judge